United States District Court
Southern District of Texas

**ENTERED**

May 15, 2025

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OSWALD MISIGARO, | § | |
| TDCJ #01439608, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-23-1558 |
| | § | |
| BLESSING SMITH and MICHELLE | § | |
| NORTHCUTT, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Oswald Misigaro (TDCJ #1439608), is an inmate currently incarcerated at the Estelle Unit in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ"). Misigaro has filed a Prisoner's Civil Rights Complaint ("Complaint") (Docket Entry No. 1) and Plaintiff's More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 11), alleging that he was denied adequate medical care by two health care providers at the Estelle Unit: Blessing Smith, a nurse practitioner, and

Michelle Northcutt, a nurse.[1]  The plaintiff represents himself and
he has paid the filing fee.

Now pending before the court is Defendant's Motion for Summary
Judgement Pursuant to Federal Rules of Civil Procedure 56 filed by
Nurse Northcutt ("Northcutt's MSJ") (Docket Entry No. 22).
Misigaro has filed Plaintiff's Summary Judgment Response
("Misigaro's Response") (Docket Entry No. 30).  After considering
the pleadings, Northcutt's MSJ, the exhibits, Misigaro's Response,
and the applicable law, the court will grant Northcutt's MSJ and
will dismiss this case for the reasons set forth below.

---

[1]In the Memorandum Opinion and Order entered on July 19, 2024
("MO&O"), the court referred to Blessing Smith as a physician (See
Docket Entry No. 20.), which was based on the plaintiff's
identification of Smith as a physician in his pleadings (See
Plaintiff's MDS, Docket Entry No. 11, p. 7 ¶ 8(a).).  Review of the
plaintiff's medical records submitted as part of the summary
judgment evidence reveals that Smith is a nurse practitioner, and
not a physician (See, e.g., Clinic Notes, Ex. 15 to Affidavit of
Bobby M. Vincent, M.D. ("Vincent Affidavit"), Docket Entry
No. 23-17, p. 4 (identifying Smith as an "NP")).  The court's
findings or conclusions in its MO&O — that the claims against Smith
are properly dismissed under 28 U.S.C. § 1915A(b) for failure to
state a claim for relief — does not change because Smith is a nurse
practitioner, rather than a physician.
    For purposes of identification, all page numbers for docket
entries in the record refer to the pagination imprinted by the
court's electronic filing system.

## I.  Background

### A.  Misigaro's Allegations[2]

On March 26, 2021, Misigaro submitted a sick call request and was seen by Nurse Northcutt on March 28, 2021.[3]  Misigaro told her that he was "not feeling well," that his heart was "racing," that he was "losing energy," and that his mouth was "getting dry."[4]  He claims that Nurse Northcutt chastised him for "cutting in front" of others with serious medical needs and refused to do anything.[5]  Nurse Northcutt told Misigaro that his dry mouth was not a sickle cell issue, and that he needed to drink more water.[6]

Misigaro was seen in the medical department again on March 29, 2021, for the symptoms listed in his March 6, 2021, sick call request.[7]  Again Nurse Northcutt dismissed him, told him that the provider had been notified, and instructed him he needed to drink more water.[8]

---

[2]As will be discussed _infra_, because the claims against Smith have been dismissed, the Background section focuses on the factual allegations concerning Nurse Northcutt.

[3]Complaint, Docket Entry No. 1, p. 8 ¶ 7.  As discussed at page 8 of this Memorandum Opinion and Order, plaintiff was actually first seen by Nurse Northcutt on March 27, 2021.

[4]_Id._ ¶ 8.

[5]_Id._ at 8 ¶¶ 8, 10; p. 9 ¶ 12.

[6]_Id._ at 9 ¶ 12; _see also_ Plaintiff's MDS, Docket Entry No. 11, p. 9 ¶ 8(d).

[7]Complaint, Docket Entry No. 1, p. 9 ¶ 12.

[8]_Id._

On April 5, 2021, Misigaro submitted another sick call request, reporting that his symptoms were getting worse despite drinking water as instructed.[9] On April 16, 2021, Nurse Northcutt told him that he would get a "lay in" to see a provider.[10]

On April 23, 2021, Misigaro was seen by Smith.[11] By this time, Misigaro states that he was "extremely ill."[12] Misigaro alleges that Smith "refused to do any physical examination as it was told to me," but he also states that Smith prescribed him a thirty-day supply for Osmolite, a nutritional liquid supplement.[13] She also instructed him to drink a lot of fluids.[14] As he was returning to his cell, a security officer escorted Misigaro back to the clinic because the security officer thought that Misigaro looked sick.[15] Nurse Northcutt reportedly shouted at him that there was "nothing we can do" because he had already been seen by a provider.[16]

---

[9]Id. ¶ 13.

[10]Id. at 10 ¶ 14.

[11]Id. ¶ 16.

[12]Id.

[13]Id. at 10-11 ¶¶ 16, 18; Plaintiff's MDS, Docket Entry No. 11, p. 8 ¶ 8(b).

[14]Complaint, Docket Entry No. 1, p. 11 ¶ 18.

[15]See id. at 12 ¶ 20.

[16]Id.

Misigaro returned to his cell, where he was found unresponsive on April 24, 2021.[17] He woke up two days later in the hospital from a "coma" as the result of "diabetes ketoacidosis."[18] Misigaro accuses Nurse Northcutt and nurse practitioner Smith of acting with deliberate indifference for failing to diagnose and treat his diabetes in March and April of 2021, before he went into a coma.[19]

As relief, Misigaro seeks compensatory and punitive damages for the violation of his civil rights.[20]

## B.    Procedural Posture

Misigaro initiated this action in April of 2023 by filing a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983.[21] At the court's request, Misigaro submitted a More Definite Statement of his claims.[22] He claims that Nurse Northcutt and nurse practitioner Smith violated his Eighth Amendment rights by failing to diagnose and treat his diabetes in March and April of 2021.[23]

---

[17]Id. ¶¶ 21-22.

[18]Id.; see also Plaintiff's MDS, Docket Entry No. 11, p. 2 ¶ 4(a).

[19]Complaint, Docket Entry No. 1, p. 12 ¶ 22, p. 16 ¶ 39; Plaintiff's MDS, Docket Entry No. 11, pp. 7-9 ¶¶ 7, 8(c)-(d).

[20]Complaint, Docket Entry No. 1, p. 4 ¶ VI, p. 18 ¶ 46.

[21]See id. at 1.

[22]Plaintiff's MDS, Docket Entry No. 11.

[23]Complaint, Docket Entry No. 1, p. 12 ¶ 22; Plaintiff's MDS, Docket Entry No. 11, pp. 7-9 ¶¶ 7, 8(c)-(d), p. 16 ¶ 39.

After screening Misigaro's pleadings as required by the Prison Litigation Reform Act, 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the court dismissed the claims against Smith.[24]  The court entered an Order to Issue Summons, directing the Clerk to issue summons for defendant Northcutt and deliver the summons to the plaintiff for service of process on Nurse Northcutt.[25]

On May 20, 2024, Nurse Northcutt filed an answer titled Defendant's Original Answer and Jury Demand ("Northcutt's Answer") (Docket Entry No. 16).  On October 14, 2024, Nurse Northcutt filed Northcutt's MSJ (Docket Entry No. 22).  In Northcutt's MSJ, she asserts that she is entitled to qualified immunity from the claims against her.[26]  Pointing to medical records that refute Misigaro's claims, Nurse Northcutt argues that Misigaro fails to establish that she denied him care in violation of the Eighth Amendment.[27] In support, Northcutt provides an affidavit from Bobby M. Vincent, M.D. ("Dr. Vincent"), a Regional Medical Director for the University of Texas Medical Branch, and medical records of treatment provided at TDCJ and Huntsville Memorial Hospital.[28]

Misigaro has filed a response (Docket Entry No. 30).

---

[24]See MO&O, Docket Entry No. 20, p. 10.

[25]Order to Issue Summons, Docket Entry No. 13, p. 2 ¶¶ 1, 2.

[26]Northcutt's MSJ, Docket Entry No. 22, pp. 16–17.

[27]Id.

[28]See Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2; and Medical Records, Exs. A4-30 to Vincent Affidavit, Docket Entry Nos. 23-4 through 23-30.

-6-

**C.   Defendant Northcutt's Summary Judgment Evidence**

Nurse Northcutt moves for summary judgment, arguing that Misigaro fails to establish a constitutional violation or to overcome her entitlement to qualified immunity from the claims against her.  In support of her motion, Northcutt has submitted an affidavit from Dr. Vincent, which recounts in detail Misigaro's medical history concerning the care Misigaro received in March and April of 2021 at the Estelle Unit and from outside providers.[29] Attached to Vincent's Affidavit are almost 100 pages of Misigaro's medical records.[30]

Misigaro first entered TDCJ custody in 2007.[31]  The intake documentation received from the Tarrant County Corrections Center indicated that Misigaro had no health problems.[32]  His intake medical history report states no family or personal history of any disease.[33]  Misigaro's intake physical exam was within normal limits

---

[29]See Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2.

[30]See Medical Records, Exs. A4-30 to Vincent Affidavit, Docket Entry Nos. 23-4 through 23-30.

[31]See Texas Uniform Health Status Update, Ex. 2 to Vincent Affidavit, Docket Entry No. 23-4, p. 2.

[32]See id.

[33]See Correctional Managed Care Receiving Screening/Medical History Report, Ex. 3 to Vincent Affidavit, Docket Entry No. 23-5, p. 2.

and indicated that he was not on any medication, but it did list a history of anemia (although not sickle cell anemia).[34]

On March 27, 2021,[35] Misigaro was seen by Nurse Northcutt at the unit clinic due to complaints of a headache.[36]   Once at the clinic, Misigaro complained of a fast heart rate and stated that he thought he was having a sickle cell crisis.[37]   The Clinic Notes indicate that Misigaro's chart did not show any history of having a sickle cell diagnosis.[38]   Misigaro "reported that he had it once in Africa and was given a transfusion" and that he "remembers that if his heartrate was up that it was likely due to a sickle cell crisis."[39]   A complete assessment was then performed.[40]   Misigaro

---

[34]See Report of Physical Examination dated June 29, 2007, Ex. 4 to Vincent Affidavit, Docket Entry No. 23-6, p. 2.   Dr. Vincent explains that anemia is "when the body does not have enough healthy red blood cells to carry oxygen to the tissues, and is often associated with fatigue and weakness, as well as shortness of breath."   See Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 3 fn.6.   Dr. Vincent further explains that sickle cell anemia is "an inherited blood disorder that causes red blood cells to become rigid and stick together."   Id. fn.7.   "This can lead to organ damage, pain in the chest or extremities among other things by limiting blood flow to vital organs."   Id.

[35]In his affidavit, Dr. Vincent explains that the Nursing Clinic Notes dated March 28, 2021, were made as a late entry for March 27, 2021.   See Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 4, fn.13.

[36]See Clinic Notes – Nursing, Ex. 8 to Vincent Affidavit, Docket Entry No. 23-10, p. 2.

[37]See id.

[38]See id.

[39]See id.

[40]See id.

denied having shortness of breath, pain, or activity intolerance.[41]
He weighed 162 pounds and his BMI was 26.[42]  Misigaro's vital signs
were within normal limits, but his oral mucosa was dry and he had
puckered lips.[43]  Nurse Northcutt reviewed Misigaro's oral intake
and determined that he had not been drinking adequately.[44]
Northcutt counseled Misigaro on sickle cell anemia, adequate fluid
intake, and dehydration.[45]  Misigaro confirmed that he understood.[46]
Nurse Northcutt also referred Misigaro to a provider to discuss his
reported history of sickle cell anemia given that no history was
ever documented.[47]

Two days later, on March 29, 2021, Misigaro was seen by
nursing staff at the clinic due to a sick call placed by Misigaro
that reported that his "heart beat is going out of control.  I am
requesting vital sign to determine what wrong with me."[48]  During
the examination by nursing staff, Misigaro denied having chest
pain, shortness of breath, or any sudden onset of blurred vision.[49]

---

[41]See id.

[42]See id.

[43]See id.

[44]See id.

[45]See id.

[46]See id.

[47]See id.

[48]See Clinic Notes – Nursing, Ex. 9 to Vincent Affidavit,
Docket Entry No. 23-11, p. 2.

[49]See id.

-9-

His weight was 164 pounds and BMI was 26.[50]  Misigaro's blood pressure was elevated, which was measured at 165/118 while he was sitting.[51]  While sitting, Misigaro's heart rate was 99 but when he moved around his heart rate increased to 105.[52]  Nursing staff observed that his breathing was even and unlabored.[53]  An EKG was performed and the results were normal.[54]  Misigaro was given four cups of cold water and his vital signs were checked again after about 20 minutes.[55]  This time his blood pressure was 165/103 and his pulse measured at 84.[56]  Nursing staff contacted the on-call provider and received orders for Misigaro to undergo blood pressure checks three times a week and to follow up with a provider in two weeks.[57]  Misigaro was instructed to increase his fluid intake and he stated that he understood the care plan.[58]

On April 6, 2021, Misigaro submitted a sick call request, stating that "the situation" does not seem to getting "any better" and that despite the advice to drink a lot of water, his mouth was

---

[50]See id.

[51]See id.

[52]See id.

[53]See id.

[54]See id.

[55]See id.

[56]See id.

[57]See id. at 3.

[58]See id. at 2.

still dry, his limbs were weak, and his heart was racing.[59]   An appointment at the unit clinic was scheduled for April 8, 2021, but was rescheduled because there was no escort available to take Misigaro to his appointment.[60]

On April 17, 2021, Misigaro was seen in the unit clinic by Nurse Northcutt.[61]   During this visit, Misigaro's weight was recorded at 157 pounds, with a BMI of 25.[62]   His vital signs were within normal limits.[63]   Misigaro denied any complaints during the examination.[64]   Nurse Northcutt's notes indicate that Misigaro was previously referred to a provider on 3/28/2021 and 3/29/2021 but that he had not yet been seen by a provider.[65]   She noted that Misigaro requested to follow up with a provider to discuss a possible sickle cell anemia diagnosis, blood work, and cardiac concerns.[66]   Northcutt indicated that she would again refer Misigaro to a provider.[67]   An appointment with a provider was scheduled for

---

[59]Sick Call Request, Ex. 10 to Vincent Affidavit, Docket Entry No. 23-12, p. 2.

[60]See Missed Clinic Visit Report, Ex. 11 to Vincent Affidavit, Docket Entry No. 23-13, p. 2.

[61]See Clinic Notes - Nursing, Ex. 12 to Vincent Affidavit, Docket Entry No. 23-14, p. 2.

[62]See id.

[63]See id.

[64]See id. at 3.

[65]See id.

[66]See id.

[67]See id.

April 20, 2021, but was rescheduled after Misigaro did not show up for the appointment.[68]  Misigaro submitted a sick call request on April 21, 2021, stating that he did not show up for his provider appointment because a TDCJ officer prevented him from attending.[69] Nursing staff responded that his appointment would be rescheduled.[70]

On April 23, 2021, Misigaro was seen by nurse practitioner Smith for his complaints of a dry mouth, loss of appetite, malaise, and a racing heart.[71]  At this appointment he weighed 145 pounds and his BMI was 23.[72]  His blood pressure was elevated at 159/101 and his pulse was 111[73]; Dr. Vincent notes that all of Misigaro's other vital signs were within normal limits.[74]  Misigaro denied having any pain, cough, chest pain, shortness of breath, fever, chills, nausea, vomiting, or diarrhea.[75]  Misigaro reported that he was not eating well due to his dry mouth.[76]  Smith performed a physical exam, which

---

[68]See Missed Clinic Note, Ex. 13 to Vincent Affidavit, Docket Entry No. 23-15, p. 2.

[69]See Sick Call Request, Ex. 14 to Vincent Affidavit, Docket Entry No. 23-16, p. 2.

[70]See id.

[71]See Clinic Notes, Ex. 15 to Vincent Affidavit, Docket Entry No. 23-17, p. 2.

[72]See id.

[73]See id. at 2, 3.

[74]See Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 6.

[75]See Clinic Notes, Ex. 15 to Vincent Affidavit, Docket Entry No. 23-17, p. 2.

[76]See id.

revealed that Misigaro was in no apparent distress, he was alert and oriented, his mucosa was pink and dry, his lungs were clear bilaterally, his heart had a normal rhythm, and his extremities had full range of motion with no signs of swelling.[77]  Smith noted that Misigaro was suffering from tachycardia (an elevated heart rate), likely related to dehydration.[78]  The plan of care was an order for three containers of Osmolite (a nutrition supplement) to be given every day for 30 days, nursing to administer 1000cc normal saline for dehydration, schedule a yearly physical exam and follow up, blood pressure checks twice a week for four weeks, and to return to the clinic as needed.[79]  A lab workup was ordered and an EKG was also performed with normal results.[80]

On April 24, 2021, Misigaro was brought to the unit clinic by a TDCJ security officer.[81]  Misigaro was complaining that he was "really sick," that he had lost a lot of weight, that he was unable to eat, that he had a "sick heart," and that "no one would see

---

[77]See id.; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 6.

[78]See Clinic Notes, Ex. 15 to Vincent Affidavit, Docket Entry No. 23-17, p. 3; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 6.

[79]See Clinic Notes, Ex. 15 to Vincent Affidavit, Docket Entry No. 23-17, pp. 3-4; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 6.

[80]See Clinic Notes, Ex. 15 to Vincent Affidavit, Docket Entry No. 23-17, pp. 3-4; EKG Report, Ex. 16 to Vincent Affidavit, Docket Entry No. 23-18; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 6.

[81]See Nursing Chart Review, Ex. 17 to Vincent Affidavit, Docket Entry No. 23-19, p. 2.

him."[82]  Misigaro was seen by Nurse Northcutt in the clinic that
day.[83]  In the Nursing Chart Review, Northcutt recorded that:

> This RN is familiar with the inmate and reminded him that
> [h]e had been seen by myself twice, by Boyce RN, other
> nurses, and then the provider just yesterday.  He was
> reminded of the work up he received, in addition to
> education on adequate hydration, how inadequate hydration
> can cause tachycardia, and that he had lab work ordered
> for further work up and review.  The inmate then stated
> that he felt like "the doctor did the wrong work up," but
> added that he would do what they said since it meant he
> was still being worked up.  He then stated that he felt
> like his "mouth didn't work, and he did not know how to
> eat."  This inmate was escorted out by security, but
> afterwards, it was noted that Osmolite had been ordered
> for supplement, and none had been picked up at pill
> window.  This RN did go cell side to inform the inmate of
> Osmolite order.  Understanding verbalized.  Due to the
> continued anxiety and medical focus and stressors,
> inquired about the inmate's mental health, after which he
> stated that he had not seen them a long time, and felt
> like that would be a good idea.  Denies suicidal or
> homicidal ideations.  Advised inmate on plan for pending
> labs, Osmolite orders and the need for him to g[o] to
> pill window, and on his Mental Health referral.
> Understanding verbalized.[84]

In the early morning hours on April 25, 2021, Misigaro was
brought to the unit clinic in a wheelchair by TDCJ security officers
for a wellness check due to an altered mental status.[85]  Dr. Vincent
summarizes that:

> Nursing staff noted [Misigaro] was alert but had an
> altered mental status, he was hyperventilating, he
> stumbled while transferring from the wheelchair to the
> stretcher, his fingerstick blood sugar was high, his

---

[82]See id.

[83]See id.

[84]See id.

[85]See Urgent/Emergent Care Record, Ex. 18 to Vincent Affidavit,
Docket Entry No. 23-20, pp. 2-3.

right arm and leg were weak, and his pupils were equal and reactive. The medical provider on call gave orders for Misigaro to be sent by ambulance to Huntsville Memorial Hospital ER due to a chan[g]e in his mental status. An IV was started and care was transferred to EMS on arrival.[86]

Misigaro was diagnosed with acute severe diabetic ketoacidosis by medical staff at Huntsville Memorial Hospital.[87]  Upon his arrival at the hospital, Misigaro was severely dehydrated with acute kidney injury and he had evidence of pneumonia.[88]  His A1c was at 16.[89]  He was placed on aggressive antibiotics and an aggressive insulin drip to bring him out of diabetic ketoacidosis.[90]  His electrolytes were "aggressively corrected and stabilized" and his potassium, phosphorus, and magnesium levels were "aggressively stabilized."[91]  Misigaro's diabetes was "aggressively controlled" and he was started on long-acting insulin.[92]  His pneumonia was also treated.[93]  Misigaro was discharged from the hospital on May 3,

---

[86]See Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, pp. 6-7; Urgent/Emergent Care Record, Ex. 18 to Vincent Affidavit, Docket Entry No. 23-20, pp. 2-6.

[87]See Huntsville Memorial Hospital Discharge Summary, Ex. 19 to Vincent Affidavit, Docket Entry No. 23-21, p. 2.

[88]See id.

[89]See id.

[90]See id.; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 7.

[91]See Huntsville Memorial Hospital Discharge Summary, Ex. 19 to Vincent Affidavit, Docket Entry No. 23-21, p. 2.

[92]See id.

[93]See id.

-15-

2021, after his condition had stabilized.[94]  Misigaro's diagnosis upon discharge was acute community-acquired pneumonia, acute diabetic ketoacidosis, severe dehydration, and acute kidney injury.[95]  Dr. Pillai, the physician at Huntsville Memorial Hospital who treated Misigaro, noted:  "I think the patient will make a full recovery."[96]  A follow up with a primary care physician in one week was recommended.[97]

On May 4, 2021, Misigaro was seen at the Estelle Unit's clinic for a follow up.[98]  Nursing staff entered provider orders for Novolin and metformin twice daily.[99]  Misigaro was also seen by nurse practitioner Smith.[100]  Misigaro stated that he felt better but still had blurry vision and he wanted to know more about his new diagnosis.[101]  According to Smith's notes, Misigaro weighed 155 pounds.[102]  He was in no apparent distress, he was alert and

---

[94]See id.

[95]See id.; Huntsville Memorial Hospital History & Physical, Ex. 20 to Vincent Affidavit, Docket Entry No. 23-22, p. 3.

[96]Huntsville Memorial Hospital History & Physical, Ex. 20 to Vincent Affidavit, Docket Entry No. 23-22, p. 3.

[97]See Huntsville Memorial Hospital Discharge Summary, Ex. 19 to Vincent Affidavit, Docket Entry No. 23-21, p. 2.

[98]See Hospital/ER Discharge Assessment, Ex. 21 to Vincent Affidavit, Docket Entry No. 23-23, p. 2.

[99]See id. at 2-4.

[100]See Clinic Notes, Ex. 22 to Vincent Affidavit, Docket Entry No. 23-24, pp. 2-4.

[101]See id. at 2.

[102]See id.

oriented, was ambulatory with a steady gait, his lungs were clear, his heart had a normal rate and rhythm, his abdomen was normal, and no swelling was noted.[103]  Smith ordered nursing staff to perform fingerstick checks and administer Misigaro's insulin twice a day as directed.[104]  Misigaro was provided education and material on diabetes mellitus II and advised to adhere to the prescribed regimen.[105]  A visual acuity test, lab work, and a Diet for Health were ordered.[106]  Smith also submitted a nonformulary request for an antibiotic (Cipro).[107]  Smith instructed Misigaro to return to the clinic as needed.[108]

On May 9, 2021, Nurse Northcutt performed a vision acuity test on Misigaro, which showed blurry vision near and far.[109]  Misigaro was referred to a provider.[110]  On May 10, 2021, Misigaro was referred to the Optometry clinic due to his new diagnosis of diabetes, complaints of increased blurry vision, and inability to

---

[103]See id. at 2-3; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 7.

[104]See Clinic Notes, Ex. 22 to Vincent Affidavit, Docket Entry No. 23-24, p. 3.

[105]See id.

[106]See id.

[107]See id.; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 7.

[108]See Clinic Notes, Ex. 22 to Vincent Affidavit, Docket Entry No. 23-24, p. 3.

[109]See Visual Acuity Test, Ex. 23 to Vincent Affidavit, Docket Entry No. 23-25, p. 2.

[110]See id. at 3.

-17-

read small print.[111]  He was also referred to the Ophthalmology clinic at Hospital Galveston for the same reasons and to perform a baseline diabetic eye examination.[112]

On September 10, 2021, Misigaro was seen in the Ophthalmology clinic for a diabetic eye exam and evaluation.[113]  The exam showed no evidence of diabetic retinopathy.[114]  He was examined in the Ophthalmology clinic again on September 22, 2022, and the exam revealed that there was no evidence of diabetic retinopathy.[115] Misigaro refused to attend his appointment in the Ophthalmology clinic that was scheduled for May 17, 2023.[116]

Following the diabetes diagnosis, Dr. Vincent summarizes Misigaro's treatment for diabetes as follows:

> Following Misigaro's diagnosis of diabetes, he has been routinely followed in the clinic and chronic care clinic for his diabetes.  As of July 5, 2024, Misigaro's diabetes was well controlled and his A1c was 6.6, which

---

[111]See Health Service Referral Request, Ex. 24 to Vincent Affidavit, Docket Entry No. 23-26; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 8.

[112]See Health Service Referral Request, Ex. 25 to Vincent Affidavit, Docket Entry No. 23-27, pp. 2-4; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 8.

[113]See MD/MLP Chart Review, Ex. 26 to Vincent Affidavit, Docket Entry No. 23-28, p. 2.

[114]See id.; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 8.

[115]See Return from Medical Appointment, Ex. 27 to Vincent Affidavit, Docket Entry No. 23-29, pp. 2-5; Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 8.

[116]See Refusal of Treatment or Services, Ex. 28 to Vincent Affidavit, Docket Entry No. 23-30, p. 2.

> is within normal range for a diabetic.  Misigaro also
> rapidly gained and surpassed his lost weight by August 9,
> 2021, where his weight was recorded as 172 pounds.

Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2,

p. 8.

## II.  <u>Standards of Review</u>

### A.  Motion for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the
Federal Rules of Civil Procedure.  Under this rule a reviewing
court "shall grant summary judgment if the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);
<u>see also Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2552 (1986).
A fact is "material" if its resolution in favor of one party might
affect the outcome of the suit under governing law.  <u>Anderson v.
Liberty Lobby. Inc.</u>, 106 S. Ct. 2505, 2510 (1986).  An issue is
"genuine" if the evidence is sufficient for a reasonable jury to
return a verdict for the nonmoving party.  <u>Id.</u>

If the movant demonstrates an "'absence of evidentiary support
in the record for the nonmovant's case[,]'" the burden shifts to
the nonmovant to "come forward with specific facts showing that
there is a genuine issue for trial."  <u>Sanchez v. Young County,
Texas</u>, 866 F.3d 274, 279 (5th Cir. 2017) (citing <u>Cuadra v. Houston
Independent School District</u>, 626 F.3d 808, 812 (5th Cir. 2010));
<u>see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio</u>

-19-

Corp., 106 S. Ct. 1348, 1356 (1986).   In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party[.]" Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010) (internal quotation marks and citation omitted).   Factual controversies, however, are resolved in favor of the non-movant only when "both parties have submitted evidence of contradictory facts." Alexander v. Eeds, 392 F.3d 138, 142 (5th Cir. 2004) (internal quotation marks omitted).   Without proof, a reviewing court will not assume that the non-movant could or would prove the necessary facts.   See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995).

## B.    Qualified Immunity

Defendant Northcutt has asserted qualified immunity from suit in this case.   Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity.   See Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982).   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986).   A plaintiff seeking to overcome qualified immunity must show:   "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."   Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted).   If the defendant's actions violated a clearly

-20-

established constitutional right, the court then asks whether qualified immunity is appropriate, nevertheless, "because the defendant's actions were 'objectively reasonable' in light of 'law which was clearly established at the time of the disputed action.'" Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010) (quoting Collins v. Ainsworth, 382 F.3d 529, 537 (5th Cir. 2004)).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." King v. Handorf, 821 F.3d 650, 653 (5th Cir. 2016) (internal quotation marks and citation omitted). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." Brown, 623 F.3d at 253 (citation omitted). "Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established right of which a reasonable officer would have been aware." Brewer v. Hayne, 860 F.3d 819, 824 (5th Cir. 2017).

At the summary-judgment stage, a plaintiff does not satisfy his burden to overcome the defense of qualified immunity with conclusory allegations or unsubstantiated assertions of wrongdoing. See Mitchell v. Mills, 895 F.3d 365, 370 (5th Cir. 2018); Williams-Boldware v. Denton County, Texas, 741 F.3d 635, 643-44 (5th Cir. 2014).

-21-

C.   **Pro Se** **Pleadings**

The court is mindful that the plaintiff represents himself. Courts are required to give a pro se litigant's contentions a liberal construction.  See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam) (citing Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)); see also Haines v. Kerner, 92 S. Ct. 594, 595-96 (1972) (noting that allegations in a pro se complaint, however inartfully pleaded, are held to less stringent standards than formal pleadings drafted by lawyers).  Nevertheless, a pro se litigant must specifically refer to evidence in the summary judgment record and set forth facts showing that there is a genuine issue of material fact remaining for trial.  Outley v. Luke & Associates, Inc., 840 F.3d 212, 217 (5th Cir. 2016); see also Bookman v. Shubzda, 945 F. Supp. 999, 1004 (N.D. Tex. 1996).  The court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment."  Adams v. Travelers Indemnity Company of Connecticut, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks and citation omitted).

### III.   **Discussion**

Misigaro asserts that Nurse Northcutt failed to diagnose and provide treatment for his diabetes.  These allegations are governed by the Eighth Amendment, which prohibits cruel and unusual punishment, i.e., the "'unnecessary and wanton infliction of

-22-

pain.'" <u>Wilson v. Seiter,</u> 111 S. Ct. 2321, 2323 (1991) (citation omitted).  To establish a claim for the denial of adequate medical care a prisoner must demonstrate that prison officials violated the Eighth Amendment by acting with "deliberate indifference to a prisoner's serious illness or injury[.]" <u>Estelle,</u> 97 S. Ct. at 291.

The deliberate indifference standard is an "extremely high" one to meet.  <u>Domino v. Texas Dep't of Criminal Justice,</u> 239 F.3d 752, 756 (5th Cir. 2001).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan,</u> 114 S. Ct. 1970, 1979 (1994).  A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at 1984.

A prisoner who alleges that he was denied medical care with deliberate indifference must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>Gobert v. Caldwell,</u> 463 F.3d 339, 346 (5th Cir. 2006)

-23-

(internal quotation marks and citation omitted).  "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."  Id. (citations omitted).

The medical records and Dr. Vincent's affidavit submitted as part of the summary judgment record refute Misigaro's claims that Nurse Northcutt failed to treat him.  "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."  Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) (citing Mendoza v. Lynaugh, 989 F.2d 191, 193–95 (5th Cir. 1993)); Brauner v. Coody, 793 F.3d 493, 500 (5th Cir. 2015) ("Deliberate indifference is not established when 'medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials[.]'") (quoting Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997)).

As discussed in detail above, Northcutt saw Misigaro three times at the unit clinic before his hospitalization at the end of April of 2021: on March 27, on April 17, and on April 24.  On March 27 Nurse Northcutt performed a complete assessment of Misigaro.  Although Misigaro's vital signs were within normal limits, his oral mucosa was dry and he had puckered lips, so Nurse Northcutt determined that Misigaro had not been drinking adequately.  Northcutt counseled him on sickle cell anemia, adequate fluid intake, and dehydration.  She also referred Misigaro

-24-

to a provider to discuss his reported history of sickle cell anemia. Nurse Northcutt next saw Misigaro on April 17. His vital signs were measured and Misigaro denied any complaints during the examination. Nurse Northcutt realized that Misigaro was previously referred to a provider on 3/28/2021 and 3/29/2021 but that he had not yet been seen by a provider, so she again referred Misigaro to a provider, and an appointment with a provider was scheduled for April 20, 2021. Nurse Northcutt saw Misigaro for a third time on April 24, which was one day after nurse practitioner Smith evaluated Misigaro at the unit clinic and submitted orders for treatment, including a lab workup and an EKG. Northcutt counseled Misigaro on the education he received from Smith the previous day and she even went to visit Misigaro at his cell later to check on his mental health and to remind him to pick up the Osmolite from the pill window.

It is evident from the medical records provided in this case that Nurse Northcutt treated Misigaro each time she saw him in the unit clinic. Where the medical records demonstrate that appropriate care was provided, any claim that a prisoner was denied medical treatment lacks merit. See McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference to medical needs claim where medical records document that the prisoner was not denied medical attention). To the extent Misigaro accuses Nurse Northcutt of acting with deliberate indifference for failing to correctly diagnose him as suffering

-25-

from diabetes, Dr. Vincent points out that Northcutt, as a registered nurse, cannot diagnose patients.[117]    After evaluating Misigaro, Nurse Northcutt referred Misigaro for examination by a provider.    Although Northcutt herself is not licensed to diagnose patients, she did not deny Misigaro access to a medical professional competent to diagnose his condition.    In fact, she followed up on her initial referral for him to see a provider. Further, the failure to diagnose — or even an incorrect diagnosis — does not amount to deliberate indifference.    See Lewis v. Evans, 440 F. App'x 263, 265 (5th Cir. 2011) (per curiam) ("Although [the provider] failed to diagnose [the inamte's] infected ear and folliculitis, '[i]t is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.'") (quoting Domino, 239 F.3d at 756); Fenlon v. Quarterman, 350 F. App'x 931, 933 (5th Cir. 2009) (finding that a five-year delay in receiving the correct medical diagnosis did not amount to deliberate indifference).

In sum, Misigaro presents no probative summary-judgment evidence controverting his medical records. Likewise, Misigaro presents no probative summary-judgment evidence that Nurse Northcutt knew of and disregarded an excessive risk to his health

---

[117] In his affidavit, Dr. Vincent explains:  "The Texas State Board of Nursing Position Statement 15.28 declares that the legal scope of practice of a registered nurse 'does not include [independent] acts of medical diagnosis or the prescription of therapeutic or corrective measures'."  Vincent Affidavit, Ex. A to Northcutt's MSJ, Docket Entry No. 23-2, p. 8.

-26-

or serious medical needs.   Because Misigaro fails to establish a
constitutional violation, Northcutt is entitled to qualified
immunity from his Eighth Amendment claims.   Northcutt's motion for
summary judgment will be granted.

### IV.   <u>Conclusion and Order</u>

Based on the foregoing, the court **ORDERS** as follows:

1.    Defendant Michelle Northcutt's Motion for Summary
      Judgement Pursuant to Federal Rules of Civil
      Procedure 56 (Docket Entry No. 22) is **GRANTED.**

2.    This civil action will be dismissed with prejudice.

The Clerk is directed to provide a copy of this Memorandum
Opinion and Order to the parties of record.

**SIGNED** at Houston, Texas, on this the 14th day of May, 2025.

_____
            SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

-27-